IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
DELTA DIVISION

**CRYSTAL CLEAR COMPUTER SOLUTIONS, LLC;**     **PLAINTIFFS,**
and **TREVER SIMES,**

v.     No. 2:20-CV-00017 LPR

**CITY OF HELENA-WEST HELENA; KEVIN
SMITH,** in his official capacity as Mayor and
Chief Executive Officer of the City of
Helena-West Helena and in his individual
capacity; and **DERRICK TURNER,** City Treasurer,
in his official capacity     **DEFENDANTS.**

**BRIEF OF THE STATE OF ARKANSAS AS AMICUS CURIAE IN SUPPORT OF NEITHER PARTY**

This Court has invited briefing on the question whether the contract between the City of Helena-West Helena and Crystal Clear Computer Solutions that was allegedly breached violated Article 12, section 4 of the Arkansas Constitution and was therefore void ab initio.

## INTRODUCTION

Article 12, section 4 of the Arkansas Constitution provides, in pertinent part, that a city council shall not "enter into any contract or make any allowance for any purpose whatsoever . . . in excess of the revenue for such city or town for the current fiscal year." This provision's express purpose is to ensure that cities conduct their fiscal affairs "on a sound financial basis." Ark. Const. art. 12, sec. 4. It includes similar provisions that prohibit city and county officials from incurring financial obligations in excess of revenue. *See id.*

Section 4 "may be asserted as a defense and must be supported by evidence showing the revenues of the city for the year or years involved and the allowances properly chargeable against those revenues." *Deason v. City of Rogers*, 247 Ark. 1061, 1065, 449 S.W.2d 410, 413 (1970). The party seeking to void the contract bears the burden of showing it is unconstitutional. *Dailey v. City of Little Rock*, 227 Ark. 537, 539, 299 S.W.2d 825, 826 (1957).

As set forth below, although Arkansas cases contain conflicting interpretations of Section 4, the Court should construe that provision to prohibit the City from incurring a single-year obligation that exceeds the same year's available revenue.  Further, before concluding that the contract is void, the Court should also carefully consider what allowances may be properly charged against the City's revenue for the purpose of determining available revenue for any particular year.

**I.     The Court should construe Section 4 to prohibit the City from incurring a single-year obligation that exceeds the same year's available revenue.**

Section 4 has been the subject of extensive litigation since its amended language became effective nearly one hundred years ago.  But courts have struggled with how to apply that section's language.  The primary difficulty is that the text underdetermines an answer to the question of which of at least two possible constructions should be given to it.  One way to resolve this ambiguity is to consider whether the prohibition on obligations exceeding "the revenue for such city or town for the current fiscal year" should be understood as prohibiting obligations that exceed (1) a city's *available*—that is, otherwise unallocated—revenue for the year or (2) its *total* revenue for the year.  The answer to that question is naturally linked to the question whether the obligation being compared to the revenue is (1) merely a *single-year* obligation or (2) an *aggregate, multi-year* obligation.

The Attorney General's office has consistently interpreted Section 4 to prohibit single-year obligations that exceed the same year's available revenue.  This Court should adopt this commonsense approach.

**A.     The cases are divided about Section 4's interpretation.**

Some cases applying Section 4 compare a city's single-year obligation with that year's available revenue.  Indeed, one court in this District has previously done so.  It deliberated on

"what figure should be taken to represent the . . . contractual obligation when making the 'revenue v. obligation' comparison." *Gov't Serv. Automation, Inc. v. Faulkner Cty.*, 929 F. Supp. 338, 341 (E.D. Ark. 1995). It concluded that the "annual obligation"—as opposed to the aggregate, multi-year obligation over the lifetime of a contract—is the appropriate figure. *Id.* at 341-43. The Arkansas Supreme Court has likewise interpreted Section 4 to require comparison of a single-year obligation with the same year's available revenue. *Lake v. Tatum*, 175 Ark. 90, 1 S.W.2d 554, 556 (1927) (comparing the first-year obligation under a multi-year contract with the same year's available revenue); *see Dailey*, 227 Ark. at 539, 299 S.W.2d at 826; *Nelson v. Walker*, 170 Ark. 170, 279 S.W. 11, 13 (1926); *Kirk v. High*, 169 Ark. 152, 273 S.W. 389, 392 (1925).

Other cases may be read to require comparing an aggregate, multi-year obligation with a city's total revenue during the first year of the contract. *See Hink v. Bd. of Directors of Beaver Water Dist.*, 235 Ark. 107, 110, 357 S.W.2d 271, 273 (1962); *Williams v. Harris*, 215 Ark. 928, 933, 224 S.W.2d 9, 12 (1949), *overruled on other grounds by City of Hot Springs v. Creviston*, 288 Ark. 286, 291, 705 S.W.2d 415, 418 (1986); *Inc. Town of Ozark v. Ozark Water Co.*, 190 Ark. 872, 81 S.W.2d 920, 921 (1935); *Stanfield v. Friddle*, 185 Ark. 873, 50 S.W.2d 237, 238 (1932); *Luter v. Pulaski Cty. Hosp. Ass'n*, 182 Ark. 1099, 34 S.W.2d 770, 770 (1931).[1] On this view, "[i]t was the deliberate intent of the people to make it difficult for cities, in periods of local enthusiasm, to undertake large debts which would bind the citizens and the municipalities' assets in years to come." *Williams*, 215 Ark. at 934, 224 S.W.2d at 12.

---

[1] In this connection, the testimony of Helena-West Helena City Treasurer Derrick Turner that "the five year contract of $358,500" did not exceed the city's revenue in 2017 or 2018 may be pertinent. DE 53-10, Turner Decl., at 61 of 81. *But see* DE 71, Def.'s Resp. to Pl.'s Statement of Undisputed Material Facts, at 17 of 31, ¶ 48 response.

Ultimately, how Section 4 should be construed comes down to one of purpose: was the provision intended to essentially mandate a balanced budget by requiring that each year's obligations are satisfied by the same year's revenue or, on the other hand, was it intended as a blunt prohibition on a city's incurring large, long-term debt?  As interpreted by the Arkansas Supreme Court, it is at least theoretically possible that section 4 could do *both*.  That is, it could prohibit a city from incurring *either* a single-year obligation that exceeds that year's available revenue *or* an aggregate, multi-year obligation that exceeds first-year total revenue.  Both constructions would be broadly consistent with the purpose of ensuring that cities conduct their fiscal affairs "on a sound financial basis." Ark. Const. art. 12, sec. 4.  But this both/and construction is best avoided, as it would require terms like "contract" and "revenue" to carry meanings that differ based on the factual scenario to which they are applied.

      **B.**     **The Attorney General's office construes Section 4 to prohibit single-year obligations that exceed the same year's available revenue.**

Considering the text and previous interpretations outlined above, the Attorney General's office has previously concluded that the more "common-sense" reading of Section 4 prohibits annual obligations from exceeding annual revenue. Ark. Op. Att'y Gen. No. 2008-161, 2009 WL 52671, at *4 (Ark. A.G. Jan. 6, 2009).  Accordingly, "a contract will pass constitutional muster so long as annual revenues over the term of the contract are sufficient to fulfill the annual obligation for each fiscal year." *Id.*; *see* Ark. Op. Att'y Gen. No. 2005-103, 2005 WL 1774988 (Ark. A.G. July 22, 2005).  That conclusion comports with the Arkansas Supreme Court's explanation—given shortly after the provision's amended language became effective—that its "plain and obvious purpose . . . [is] to prevent [cities] from expending in any year, for any purpose, any sum in excess of the revenues for that year." *McGregor v. Miller*, 173 Ark. 459, 293 S.W. 30, 32 (1927).

Under Section 4, "[m]ulti-year contracts . . . are not *per se* unconstitutional." *Gov't Serv. Automation*, 929 F. Supp. at 341; *see Lake*, 175 Ark. 90, 1 S.W.2d at 556 (upholding a multi-year contract). In fact, the Attorney General's office has opined that phrases like the one prohibiting "any allowance for any purpose whatsoever . . . in excess of the revenue for such city or town for the current fiscal year" should be read as authorizing a local governmental entity "to enter into a multi-year contract so long as its contractual obligation in any given year does not exceed available revenues for that year." Ark. Op. Att'y Gen. No. 2008-161, 2009 WL 52671, at *2.

In any fiscal year that an amount currently due on a contract exceeds the available revenue for that year, then, the contract is void at least as to that portion of the obligation exceeding the available revenue. Ark. Const. art. 12, sec. 4 (disallowing contracts or allowances "in excess of the revenue for such city or town for the current fiscal year"); *see Miller Cty. v. Blocker*, 192 Ark. 101, 90 S.W.2d 218, 221 (1936); *Cook v. Shackleford*, 192 Ark. 44, 90 S.W.2d 216, 218 (1936); *Polk Cty. v. Mena Star Co.*, 175 Ark. 76, 298 S.W. 1002, 1006 (1927); *McGregor*, 173 Ark. 459, 293 S.W. at 32.

Further, a contract may be deemed void for any fiscal year—including a year subsequent to that in which the contract was entered—if the amount currently due would exceed currently available revenue. That is because "the financing restrictions set forth in Article 12, § 4" might be read "into the contract itself, in effect providing that an implied nonappropriation clause must be given effect in any fiscal year in which the annual contractual obligation exceeds available revenues." Ark. Op. Att'y Gen. No. 2008-161, 2009 WL 52671, at *5. Contracts "*must* be construed with reference to [Section 4]. Parties cannot, by pleadings or stipulations of any kind, abrogate this [provision,] *which will be read into any contract which the city may make*."

*Williams*, 215 Ark. at 932, 224 S.W.2d at 11 (emphases added); *Woodend v. Southland Racing Corp.*, 337 Ark. 380, 384, 989 S.W.2d 505, 507 (1999) ("It is also well settled that the law in effect at the time a contract is made forms a part of the contract as if it had been expressed in the contract."). Indeed, this is the course followed by the Eighth Circuit, which has applied Arkansas law to hold that a contract contains a term required by the law in effect at the time the contract was made, even in the absence of a "'meeting of the minds' with respect to that particular term." *Cuellar-Aguilar v. Deggeller Attractions, Inc.*, 812 F.3d 614, 619 (8th Cir. 2015) (quoting *Alltel Corp. v. Sumner*, 360 Ark. 573, 576, 203 S.W.3d 77, 80 (2005)).

**II.      The Court should carefully consider what allowances may be properly charged against the City's revenue for the purpose of determining available revenue in any particular year.**

Before concluding that a contract is void, the factual issue of whether there is sufficient revenue available to cover the City's contractual obligation should be carefully considered in light of all relevant circumstances. Such considerations may include permitting further discovery into, or requesting further factual showings concerning, the circumstances of the City's deficit for the relevant period.

When determining the City's available revenue for any particular year, it should be borne in mind that Section 4 has been construed to require that "the revenue of a subsequent year should not be applied to pay the liability of a past fiscal year." *Lake*, 175 Ark. 90, 1 S.W.2d at 556; *see Dixie Culvert Mfg. Co. v. Perry Cty.*, 174 Ark. 107, 294 S.W. 381, 382 (1927). *But see Inc. Town of Ozark*, 190 Ark. 872, 81 S.W.2d 920, 922 (1935). Thus, it should not be uncritically assumed that liabilities carried over from a previous fiscal year reduce the current year's available revenue for the purpose of the revenue-versus-obligation comparison.

Further, "[t]he rule appears to be well settled that when a municipality . . . has created a contractual indebtedness . . . , the indebtedness cannot thereafter be invalidated by the

6

governmental subdivision by making expenditures for other purposes in excess of its revenue for the year." 159 A.L.R. 1261 (citing, *inter alia*, *Manhattan Rubber Mfg. Div. of Raybestos Manhattan v. Bird*, 208 Ark. 167, 185 S.W.2d 268 (1945); *Democrat Printing & Lithographing Co. v. Crawford Cty.*, 191 Ark. 409, 86 S.W.2d 552 (1935); *Skinner & Kennedy Stationery Co. v. Franklin Cty.*, 190 Ark. 1178, 82 S.W.2d 27, 27 (1935); *Skinner & Kennedy Stationery Co. v. Crawford Cty.*, 190 Ark. 883, 82 S.W.2d 22 (1935); *Stanfield*, 185 Ark. 873, 50 S.W.2d 237). And, finally, "the status of the revenues of a political subdivision against which claims may be brought is to be reckoned on the date of allowance or disallowance of the claims and not on the date when the claims were filed." *Id.* (citing relevant Arkansas case law).

Thus, the Court may consider, for example, whether there is evidence that any obligations to Crystal Clear Computer Solutions were not met by the City as a result of expenditures or allowances not properly chargeable against the City's available revenue. *See Deason*, 247 Ark. at 1065, 449 S.W.2d at 413 (a Section 4 defense "must be supported by evidence showing the revenues of the city for the year or years involved and the allowances *properly* chargeable against those revenues" (emphasis added)).

\*     \*     \*

Delving further into the question of whether the contract at issue violates Article 12, section 4 of the Arkansas Constitution would entail conducting a factual analysis of the sort that the Attorney General is not well positioned to perform. But the Attorney General is pleased as amicus curiae to respectfully submit the foregoing discussion of pertinent legal principles for the Court's consideration.

Dated: May 14, 2021

Respectfully submitted,

LESLIE RUTLEDGE
Arkansas Attorney General

Michael A. Cantrell (2012287)
Assistant Solicitor General
ARKANSAS ATTORNEY GENERAL'S OFFICE
323 Center Street, Suite 200
Little Rock, AR 72201
Phone:   (501) 682-2007
Fax:     (501) 682-8162
Michael.Cantrell@ArkansasAG.gov